**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

WILLIAM A. WHITE,

    Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

    Defendant - Appellee.

No. 21-6007
(D.C. No. 5:20-CV-00141-HE)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **CARSON**, Circuit Judges.
_____

Mr. William A. White, a federal prisoner, sued the United States under the Federal Tort Claims Act ("FTCA") for Intentional Infliction of Emotional Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") in connection with the use of "black-box" restraints and for the time he spent in a Special Housing Unit ("SHU") (also known as "solitary confinement") under restricted-environmental-stimuli ("RES") conditions during his incarceration at the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC Oklahoma City") between April 21, 2015, and April 30, 2015. Mr.

---

    * This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

White alleged that he suffered, among other afflictions, post-traumatic stress disorder ("PTSD") as a result of these conditions.

The district court dismissed Mr. White's claims pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)." 42 U.S.C. § 1997e(e).[1]  The district court held that Mr. White had failed to adequately plead a physical injury under this section.  Mr. White now appeals from that order, as well as from the district court's denial of his motion to reconsider—which sought the reinstatement of the U.S. Marshals Service ("USMS") as a defendant to his claims—and from the denial of his motion to alter or amend the judgment, pursuant to Federal Rule of Civil Procedure 59(e), in which Mr. White sought leave to amend his complaint to pursue nominal damages.

Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm in part and dismiss in part**. Based on Mr. White's waiver of any argument to the contrary, we assume without deciding that § 1997e(e) requires a plaintiff to plead a more-than-*de-minimis* physical injury in order to bring a federal action for mental or emotional injury suffered while in

---

[1]    Congress has incorporated the same physical injury requirement into the FTCA.  *See* 28 U.S.C. § 1346(b)(2).  For simplicity and readability, we primarily refer to the PLRA—as opposed to both the PLRA and FTCA—in our discussion of the "physical injury" requirement.  However, because Congress included the same "physical injury" requirement in both statutes, the substance of our discussion also applies to our interpretation of the FTCA.

2

custody.  We hold that Mr. White has not adequately pleaded that he suffered a more-than-*de-minimis* physical injury during the timeframe relevant to his incarceration at FTC Oklahoma City.  Accordingly, the district court did not err in dismissing Mr. White's claims for IIED and NIED.  Further, we conclude that Mr. White has waived his appellate challenge to the district court's denial of his motion to amend his complaint to pursue at least nominal damages.  And because we uphold the district court's dismissal of Mr. White's IIED and NIED claims and the court's rejection of his request to pursue nominal damages, we conclude that his motion to reinstate the USMS as a defendant is moot.  Accordingly, we **dismiss** that portion of Mr. White's appeal for lack of subject-matter jurisdiction.

Accordingly, we **affirm in part and dismiss in part.**

# I

## A

Mr. White is a federal prisoner in the custody of the Federal Bureau of Prisons ("BOP").  Since October 17, 2008, Mr. White has been housed at a variety of correctional institutions.[2]  On August 7, 2017, Mr. White brought a *pro se*[3] complaint in the United

---

[2]    Mr. White was released from custody on bond between September 18, 2009, and September 23, 2009, and was not incarcerated by the BOP between April 20, 2011, and June 9, 2012.

[3]    As to the periods of time Mr. White has proceeded *pro se*, we construe his filings liberally, but do not act as his advocate.  *See United States v. Parker*, 720 F.3d 781, 784 n.1 (10th Cir. 2013) ("While we liberally construe Parker's pro se filings, we will not 'assume the role of advocate.'" (quoting *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008))).

3

States District Court for the Southern District of Illinois under the FTCA, alleging that "the United States of America, through the Bureau of Prisons, and [] the United States Marshals Service, inflicted upon [him] [PTSD]." R. at 72, ¶ 1 (Br. in Supp. of Compl., filed Aug. 7, 2017). The district court granted Mr. White's request to appoint legal counsel and, through counsel, Mr. White filed the operative Second Amended Complaint.

In the Second Amended Complaint, Mr. White brought fifty-four tort claims against the BOP and the USMS, involving over a dozen prisons and jails located across multiple judicial districts. Specifically, Mr. White brought claims for battery, IIED, and NIED, alleging that he had been subjected to "torture" through the use of solitary confinement, RES, and "black-box"[4] restraints at the various facilities where he had been housed during his incarceration, and while he was being transported between the facilities. *Id.* at 152, ¶ 17 (Second Am. Compl., filed April 2, 2018). According to Mr. White, these conditions caused "mental anguish, physical injury, emotional distress, extreme pain and risk of death." *Id.*

Mr. White asserted that he underwent psychiatric evaluation and testing while he was housed at the Metropolitan Correctional Center, Chicago ("MCC Chicago") between October 19, 2015, and June 6, 2016, and that licensed clinical psychologist Dr. Eric

---

[4]    As Mr. White explains it, "[a] 'black-box' is a high-strength metal handcuff cover which is placed over the locking apparatus connecting the pair of handcuff[s] placed on an inmate's wrists. A chain runs through the black-box and around the inmate's waist, which is tightened and locked so that the inmate's hands are pulled to his stomach. The inmate is left virtually unable to move his arms, with any movement causing the black-box to cut into the skin near his wrist." R. at 158, ¶ 43.

Ostrov diagnosed him with PTSD. Mr. White alleged that "Dr. Ostrov specifically related the PTSD diagnosis to trauma [Mr. White] experienced while incarcerated," and attached Dr. Ostrov's report to the Second Amended Complaint. *Id.* at 164, ¶ 70.

Mr. White detailed four incidents from periods of confinement prior to his diagnosis—and also prior to his time at FTC Oklahoma City—that he alleged were particularly traumatic. First, while Mr. White was incarcerated at Roanoke City Jail in October 2008, authorities placed him in a bare, small room with no windows, denied him hygiene products, withheld a change of clothes, and subjected him to a constant bright light.

Second, while Mr. White was being held in the SHU at MCC Chicago in November 2008, his cell had no heat while outside temperatures reached -20º F, and he was given no linens or blankets to keep warm. "As a result of the lack of heat and/or materials for [Mr. White] to use for warmth, he experienced extreme pain resulting from cold during these five days and feared that he would freeze to death." *Id.* at 154, ¶ 24. Then, Mr. White was transferred to another cell, which "flooded with human feces from a nearby sewage drain . . . [and] [he] was left in the cell for over 24 hours with [one inch] of human feces covering the floor of the cell." *Id.* at 155, ¶ 25. Mr. White was finally placed in another cell, but it was "overrun with cockroaches" and, while held in that cell, "he witnessed numerous acts of extreme violence from the guards towards other inmates." *Id.* at ¶¶ 26–27.

Third, while Mr. White was in the SHU at Federal Correctional Institute, Beckley ("FCI Beckley") in September 2010, he was subjected to RES conditions, and suffered

from altered perceptions and hallucinations.  According to Mr. White, these symptoms were "characteristic of RES-induced brain injury."  *Id.* at 157, ¶ 35.  By December 2010, when Mr. White was transferred back to MCC Chicago, he "had ceased to have regular sleep/wake cycles, had regular visions [sic] and was losing the ability to communicate intelligently."  *Id.* at 157, ¶ 37.

Mr. White avers that his "condition worsened after his transfer to MCC Chicago to the point where, from mid-February to March 9, 2011, while [at] MCC Chicago, he became nearly completely unresponsive, sitting and staring at the wall."  *Id.* at ¶ 38.  "After approximately 2 weeks in this condition, he was awakened in an excited delirium, during which he destroyed all property in his cell, cut his stomach, and began writing on the walls with blood."  *Id.*  Upon his release from custody in April 2011, "he was in a state of delirium and confusional psychosis and unable to resume his normal life, resulting in his closing his business and seeking a divorce.  He was unable to sleep more than three hours per night, had visions, waking nightmares and other symptoms."  *Id.* at 157–58, ¶¶ 38–39.

Fourth, when Mr. White was held at the John E. Polk Correctional Facility, a Florida county jail, from May 13, 2014, to December 23, 2014, he asserts that he was "subjected to torture at the instruction of the USMS," including "[b]eing housed in a 7x7 room with no windows; [b]eing subjected to a constant bright light," which "caus[ed] extreme physical pain to his head and eyes"; being unable to sleep; being subjected to 24-hour video surveillance; "being denied access to hygiene activ[ities], including not being

6

allowed to shave or cut his hair for three months"; and "[b]eing denied access to recreation time for three months." *Id.* at 161–62, ¶ 58.

Mr. White claims that, "[a]fter a little over one month of this constant treatment, on June 17, 2014, [he] entered into a dissociative state and became unable to eat or drink." *Id.* at 162, ¶ 59. On June 23, 2014, he physically collapsed. A medical examination determined that his body temperature was 96.4º F, his blood pressure was 148/100, and he had lost 26 pounds since his arrival at the facility. Throughout the Second Amended Complaint, Mr. White also references several other periods during which he was held in solitary confinement under RES and/or subjected to the use of "black-box" restraints during his incarceration.

Because this appeal ultimately concerns only Mr. White's brief time at FTC Oklahoma City between April 21, 2015, and April 30, 2015, we recite his allegations regarding the events that occurred during that period. First, Mr. White alleges that he was subjected to "black-box" restraints while being transported to FTC Oklahoma City from John E. Polk Correctional Facility on April 21, 2015. Second, he alleges that he was held in the SHU under RES conditions during the entire time that he was incarcerated at FTC Oklahoma City. He claims that, as a result of these conditions, he suffered emotional distress, mental anguish, PTSD, personality disorder, physical injury, extreme pain, and risk of death.

**B**

**1**

On June 15, 2018, the United States moved to dismiss the Second Amended Complaint. It argued that none of the counts satisfied the requisite pleading standard under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and additionally that Counts 1 through 36, and 40, were time-barred; Counts 37 and 38 were partially time-barred; venue was improper as to all counts other than Counts 50 through 54; and Counts 50 through 54 should be dismissed for failure to state a claim.

Of the fifty-four total counts, the District Court for the Southern District of Illinois dismissed fourteen counts against the BOP as untimely (the portions of Counts 1–8, 13–14, 19–20, and 26–27 against the BOP), and dismissed *all claims against the USMS* for failure to exhaust administrative remedies (the remainder of Counts 1–8, 13–14, 19–20, and 26–27; Counts 9–12, 15–18, 21–25, 28–36, 39–40, 43–46, 49, and 52, in full; and the portions of Counts 37–38, 41–42, 47–48, and 50–51 against the USMS). Of the ten remaining counts (Counts 37–38, 41–42, 47–48, 50–51, and 53–54, as to the BOP), the court determined that six—those involving periods of incarceration at facilities outside the Southern District of Illinois—were improperly venued (Counts 37–38, 41–42, and 47–48). Because Mr. White's residence had been in the Western District of Virginia prior to his incarceration, the court transferred those six counts to the Western District of Virginia, retaining jurisdiction over the remaining four counts.

8

As to the six transferred counts, the Western District of Virginia determined that those counts should be further severed and heard in the respective districts where the relevant conduct occurred, "for purposes of the convenience of the parties and in the interest of justice." *Id.* at 443 (W.D. Va. Mem. Op., filed Feb. 11, 2020). Therefore, the court transferred Counts 37, 38, and the portions of Counts 41 and 42 concerning conduct that occurred at United States Penitentiary, Canaan ("USP Canaan"), to the Middle District of Pennsylvania. The court transferred the portions of Counts 41 and 42 concerning conduct that occurred at Federal Correctional Institution, Loretto ("FCI Loretto") to the Western District of Pennsylvania. Lastly, the court transferred Counts 47 and 48, which concerned conduct that occurred at FTC Oklahoma City, to the Western District of Oklahoma. This case centers on Counts 47 and 48—the two counts transferred to the Western District of Oklahoma.

**2**

In the Western District of Oklahoma, the United States moved to dismiss Counts 47 and 48 for failure to state a claim. Mr. White filed a *pro se* response opposing the motion to dismiss. He also moved for reinstatement of the USMS as a defendant; more specifically, he sought reconsideration of the dismissal order as to the USMS of the district court in the Southern District of Illinois.

The district court referred the motions to a magistrate judge, who recommended that the motion to dismiss be granted and the motion to reconsider the dismissal of the USMS be denied. As to the motion to dismiss, the magistrate judge concluded that Mr. White did not adequately plead a physical injury as required by

the PLRA and FTCA.  Specifically, while Mr. White asserted that he suffered "physical injury" and "extreme pain" as a result of the BOP's actions, the magistrate judge found that those allegations were "too conclusory to plead physical injury under the FTCA or PLRA."  *Id.* at 532 (R. & R., filed Sept. 25, 2020).  Further, regarding Mr. White's allegations that he experienced hallucinations, delusions, the inability to sleep, and other physical symptoms, the magistrate judge found that those were "physical manifestations of his mental injuries" rather than standalone physical injuries.  *Id.* at 534.  "Although [Mr. White] contend[ed] these symptoms emanate[d] from an 'RES-induced brain injury,'" the magistrate judge found that "nothing in the complaint suggest[ed] it was physical in nature."  *Id.* at 535.

The magistrate judge also found in the alternative that—even if Mr. White's alleged injuries amounted to physical injuries—they were "too remote in time to the mental or emotional injuries alleged in Claims 47 and 48."  *Id.* at 537.  And the magistrate judge emphasized that no claim for mental distress can be brought under the PLRA absent an "accompanying" physical injury.  *Id.* at 539 (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 973 n.2 (10th Cir. 2001)).  Because Mr. White's alleged physical injuries "took place at different correctional facilities between November 2008 and November 2014—well prior to April 2015, when the events in Counts 47 and 48 allegedly occurred"—those injuries did not "accompany[]" his mental or emotional injury at FTC Oklahoma City in April 2015.  *Id.* at 538.  Lastly, the magistrate judge also found that causation was lacking because, "where a plaintiff

10

does not allege deliberate indifference, he must show the defendant caused the physical injury." *Id.* at 539.

As to Mr. White's motion to reconsider the dismissal of the USMS—which sought the agency's reinstatement as a defendant to his claims—the magistrate judge recommended that the motion be denied because no actions concerning the USMS were before the court. The USMS had been removed from Counts 47 and 48 by the dismissal order of the district court in the Southern District of Illinois prior to those counts being transferred to the Western District of Oklahoma.

The district court adopted the magistrate judge's recommendation, granting the motion to dismiss and denying Mr. White's motion to reconsider the dismissal of the USMS as a defendant to his claims. Mr. White then filed a *pro se* motion under Federal Rule of Civil Procedure 59(e) arguing that PTSD itself constitutes a "physical injury" under the PLRA and FTCA. He also renewed his request that the USMS be reinstated as a defendant. Further, raising the issue for the first time, Mr. White requested that the district court alter or amend the judgment to permit him to amend his complaint to pursue nominal damages.

Before the United States filed a response, the district court denied Mr. White's Rule 59(e) motion. The district court did not address Mr. White's contention that his PTSD qualified as a physical injury but noted only that "[Mr. White's] further arguments do not establish any error as to the court's initial disposition." *Id.* at 606 (Dist. Ct. Order, filed Dec. 14, 2020). Regarding Mr. White's motion to reconsider the dismissal order as to the USMS—which sought the agency's reinstatement as a

11

defendant to his claims—the court declined to grant relief again because "[a]cceptance of [Mr. White's] argument would turn this court into a *de facto* court of appeals on matters never transferred to it." *Id.* Finally, the court rejected Mr. White's request to pursue nominal damages because he failed to cite authority permitting him to pursue nominal damages in a tort case based on state law, rather than in a case alleging a constitutional violation.

**3**

Still proceeding *pro se*, Mr. White timely appealed the district court's decisions. In his opening brief, Mr. White brought three grounds for appeal: (1) whether the district court erred in finding that he did not plead a physical injury; (2) whether the district court erred in finding that he could not pursue nominal damages; and (3) whether the district court erred in not reinstating the USMS as a defendant. The United States filed its response brief, and Mr. White filed a reply.

This court entered an order on May 13, 2022, appointing counsel for Mr. White and directing the parties to file supplemental briefing on two issues: "(1) whether post-traumatic stress disorder ('PTSD') qualifies as 'physical injury' for purposes of Appellant's claims; and (2) if PTSD qualifies as a physical injury, does it matter for purposes of Appellant's claims that the Federal Bureau of Prisons—the entity Appellant is currently suing—did not cause the PTSD?" Order, No. 21-6007, at 2 (10th Cir., filed May 13, 2022). The parties filed their supplemental briefing accordingly.

12

## II

We review de novo a district court's grant of a 12(b)(6) motion to dismiss. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citing *Albers v. Bd. of Cnty Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014)). We accept as true all well-pleaded factual allegations and view them in the light most favorable to Mr. White. *See id.* To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

The abuse of discretion standard governs our review of all denials of motions to reconsider. *See, e.g.*, *Price v. Philpot*, 420 F.3d 1158, 1167 (10th Cir. 2005) ("However, regardless of whether this claim is treated as a motion to reconsider under Rule 59, Rule 60(b), or as an interlocutory motion before any final judgment, we do not find the court abused its discretion in this case."). "To reverse, we must have 'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016) (quoting *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 899 (10th Cir. 2014)). "The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* (quoting *ClearOne Commc'ns,*

13

*Inc. v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011)). In that regard, any

"underlying legal determinations" are reviewed "de novo." *United States v. Hasan*,

609 F.3d 1121, 1127 (10th Cir. 2010).

### III

This appeal presents three issues. We must decide (1) whether Mr. White

adequately pleaded a "physical injury" under the PLRA; (2) whether the district court

abused its discretion in refusing to allow Mr. White to pursue nominal damages; and

(3) whether the district court abused its discretion in failing to reinstate the USMS as

a defendant. We address each issue in turn.

### A

Because we conclude that Mr. White has waived any argument that the

PLRA's physical injury requirement does not contain a more-than-*de-minimis* injury

severity threshold—as the government maintains—we assume without deciding that

this threshold is applicable. We then conclude that Mr. White has not adequately

pleaded a physical injury that is more-than-*de-minimis* related to his incarceration at

FTC Oklahoma City between April 21, 2015, and April 30, 2015. Accordingly, the

district court did not err in dismissing his claims.

### 1

Section 1997e(e) of the PLRA provides that "[n]o Federal civil action may be

brought by a prisoner confined in a jail, prison, or other correctional facility, for

mental or emotional injury suffered while in custody without a prior showing of

physical injury or the commission of a sexual act (as defined in section 2246 of title

14

18)." 42 U.S.C. § 1997e(e). The PLRA does not define "physical injury" in the statute. *See Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002) ("We note at the outset that the phrase 'physical injury' does not wear its meaning on its face."); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). "In drafting § 1997e(e), Congress failed to specify the type, duration, extent, or cause of 'physical injury' that it intended to serve as a threshold qualification for mental and emotional injury claims. Nor did it define the meaning or limits of 'mental or emotional injury.'" *Oliver*, 289 F.3d at 626.

In light of this omission, courts have used various principles of statutory interpretation to define the contours of § 1997e(e)'s physical injury requirement. To date, all circuits to have addressed the issue have read into § 1997e(e)'s "physical injury" requirement a "threshold of degree or severity"—specifically, a more-than-*de-minimis*-injury requirement. *Johnson v. Reyna*, 57 F.4th 769, 776 (10th Cir. 2023); *see also id.* ("On its face, § 1997e(e) requires only a 'physical injury' without a set threshold of degree or severity. But so far, all seven circuits to address the issue have required plaintiffs to show more than a de minimis physical injury to recover for a mental or emotional injury.").[5] While the Tenth Circuit has not yet held in a

---

[5]    *See, e.g.*, *Siglar*, 112 F.3d at 193 ("In the absence of any definition of 'physical injury' in the new statute, we hold that the well established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering. That is, the injury must be more than *de minim[i]s*, but need not be significant."); *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) ("Under the statute and our caselaw, an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more

15

published opinion whether a physical injury must be more than *de minimis* to recover for a mental or emotional injury, we assumed without deciding in *Johnson* that the more-than-*de-minimis* standard applied, and—as both parties note—district courts in this circuit have required a physical injury to be more than *de minimis* to support recovery for a mental or emotional injury.  *See Johnson*, 57 F.4th at 777; *see, e.g., Clifton v. Eubank*, 418 F. Supp. 2d 1243, 1246 (D. Colo. 2006); *Edwards v. Miller*, No. 06-cv-933, 2007 WL 951696, at *1 (D. Colo. Mar. 28, 2007); *Jordanoff v. Lester*, No. 15-cv-939, 2018 WL 1352184, at *2 (W.D. Okla. Mar. 15, 2018); *Johnson v. Aucoin*, No. 18-cv-194, 2019 WL 699111, at *8 (D. Colo. Feb. 20, 2019).

The government advances this more-than-*de-minimis* standard in its briefing, and Mr. White makes no argument to the contrary—indeed, he follows the same path. In this regard, the government makes the following assertion:

> Even if Mr. White's alleged PTSD diagnosis could constitute both a mental or emotional injury and a physical injury, he has failed to establish that it is sufficiently severe.  "While the Tenth Circuit has not addressed this question directly, [district courts within this circuit] agree with numerous other courts that a de minimis injury

than de minimis) physical injury."); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999); *Oliver*, 289 F.3d at 627 ("Following the Second, Fifth and Eleventh Circuits, we hold today that for all claims to which it applies, 42 U.S.C. § 1997e(e) requires a prior showing of physical injury that need not be significant but must be more than *de minimis*."); *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003) ("We therefore follow the approach of the Fifth, Ninth, and Eleventh Circuits in requiring a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury."); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("We have indicated that even though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward."); *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("We interpret the PLRA to require more than a de minimis physical injury.").

16

> is insufficient to satisfy the PLRA's 'physical injury' requirement
> for mental or emotional damages."

Aplee.'s Suppl. Resp. Br. at 25 (alteration in original) (quoting *Jordanoff*,

2018 WL 1352184, at *2).

For his part, Mr. White does not contend that there is no minimum

severity threshold for the PLRA's physical injury requirement.  Indeed, he

accepts that there is a more-than-*de-minimis* requirement.  In particular, he

writes:

> [T]he primary limitation recognized by federal courts is that a
> 'physical injury' must be more than de minimis . . . .  Though the
> Tenth Circuit has not explicitly adopted it, district courts within
> the Tenth Circuit have generally required more than a de minimis
> physical injury in evaluating claims for mental or emotional
> distress under the PLRA or FTCA.

Aplt.'s Suppl. Br. at 23–24 (citations omitted).  Specifically, Mr. White has

limited his argument to the contention that he *has* alleged a more-than-*de-*

*minimis* physical injury.  Stated otherwise, Mr. White never argues that

§ 1997e(e) *does not* require a physical injury to be more than *de minimis*.

What's more, Mr. White seeks to use § 1997e(e)'s alleged more-than-*de-*

*minimis* injury requirement to his advantage in making his case for relief.

Specifically, he asserts that we need not worry about enabling a wave of frivolous

litigation if we conclude that PTSD is a physical injury—because those claims will

still be subject to a more-than-*de-minimis* severity threshold.  *See id.* at 37 ("Further,

a holding that PTSD is a physical injury—and even that the defendant need not cause

the physical injury (though that additional holding is not required here)—will not

17

open the floodgates to frivolous litigation. . . .  [T]o effectuate congressional intent, courts have fashioned rules requiring the physical injury to be more than *de minimis*. That limitation still applies to PTSD, or any similar injury a plaintiff may allege."). At oral argument, Mr. White's counsel also repeated that a physical injury must be more than *de minimis*.

Because Mr. White does not bring an argument that § 1997e(e) *does not* require a plaintiff to allege a more-than-*de-minimis* physical injury—on his own, or in response to the government's assertion that a physical injury under § 1997e(e) must be more than *de minimis*—and, indeed, embraces the more-than-*de-minimis* injury standard, he has waived any argument that this standard does not apply.  *See, e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1181 (10th Cir. 2023) (noting that "one also may waive appellate review of an issue by not arguing it—or arguing it in an inadequate manner—in one's opening brief"); *cf. United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1185 (10th Cir. 2009) ("[It] is patent that, viewed as a whole, Mr. Cruz-Rodriguez's intentional litigation conduct . . . effected a waiver of any challenge that Mr. Cruz-Rodriguez may have had to the alleged constructive amendment of his indictment.").

Accordingly, in step with the parties' briefs, and consistent with our approach in *Johnson*, we assume without deciding that the more-than-*de-minimis* standard applies to the PLRA's physical injury requirement.  *See Johnson*, 57 F.4th at 777 ("The parties urge us to decide whether a de minimis injury satisfies § 1997e(e)'s physical-injury requirement and whether pain alone is enough to show a physical

injury. But when we properly construe his complaint, we see that Johnson has alleged a serious physical injury beyond pain alone that would satisfy § 1997e(e) even under the more stringent standard recognized by other courts. So we won't decide today whether a de minimis injury or physical pain alone can satisfy § 1997e(e)."); *cf. United States v. Burkholder*, 816 F.3d 607, 621 n.11 (10th Cir. 2016) ("In our adversary, common-law system, courts properly answer only the questions that the parties present to them and that are necessary for the resolution of the case at hand."). Consequently, we assume that Mr. White must demonstrate that he alleged a more-than-*de-minimis* physical injury in order to sustain his claims for mental or emotional injury. He fails to do so.

### 2

Specifically, Mr. White has not adequately alleged that he suffered a more-than-*de-minimis* physical injury during his incarceration at FTC Oklahoma City between April 21, 2015, and April 30, 2015.

#### a

In *Johnson*, because we merely assumed without deciding that the more-than-*de-minimis* injury standard was applicable to the PLRA's physical injury requirement, we had no need to definitively opine on the contours of that injury standard. Nevertheless, we noted the considerations that courts have taken into account in applying the standard, and we followed suit and analyzed the injury question in that case with those considerations in mind. In particular, as we observed, courts have assessed whether an injury was "intense, prolonged, [or]

19

exacerbated" in order to determine whether it was more than *de minimis*. *Johnson*, 57 F.4th at 777. Elaborating, we noted:

> Courts that require more than a de minimis injury to satisfy § 1997e(e)'s physical-injury requirement look to the duration and intensity of the injury and whether the plaintiff required medical treatment to decide whether the injury is more than de minimis. These courts consider some injuries de minimis, such as "a sore, bruised ear lasting for three days," or a few days of an upset stomach, minor cuts, and itchiness. And they consider as de minimis injuries some ailments like headaches, cramps, nosebleeds, dizziness, and weight loss. But when an injury lasts longer, causes more pain, and requires medical treatment, courts are more likely to find that the physical injury supports a claim for mental or emotional injuries under § 1997e(e). For example, in *Gomez*, the Fifth Circuit held that the plaintiff suffered more than a de minimis injury when he endured "cuts, scrapes, [and] contusions to the face, head, and body" that required medical treatment after prison officers kicked and punched him for about five minutes.

*Id.* (citations omitted) (first quoting *Siglar*, 112 F.3d at 193; then quoting *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999)).

We are inclined to follow *Johnson*'s lead here and focus on these considerations, as we assume—as *Johnson* did—the applicability of a more-than-*de-minimis* injury standard. In doing so, Mr. White's briefing gives us no pause. Though it pre-dates our opinion in *Johnson*, Mr. White's briefing does not shy away from considerations like those identified in *Johnson*; indeed, he contends that he prevails under them. *See* Aplt.'s Suppl. Br. at 29 ("Even under the definition of physical injury that some courts have rejected as too restrictive, PTSD meets that definition. That is, PTSD is a 'diagnosable medical condition requiring treatment by a medical care professional.' Thus, *by any metric*, Mr. White's alleged physical

20

injury is more than *de minimis*.  In short, as alleged, PTSD is a physical injury, and it is a serious one." (emphasis added) (citations omitted) (quoting *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997))).  Therefore, we look to whether Mr. White has alleged that his PTSD was intense, prolonged, exacerbated, and/or whether he required medical treatment in determining whether he has alleged a more-than-*de-minimis* physical injury.

In Counts 47 and 48 of the Second Amended Complaint, Mr. White asserts only that he experienced "Post-Traumatic Stress Disorder," "Physical Injury," and "Extreme Pain" during his time at FTC Oklahoma City.  R. at 253, ¶ 637.  These allegations, however, do not "contain sufficient factual matter" to plausibly allege that Mr. White experienced a more-than-*de-minimis* physical injury while incarcerated at FTC Oklahoma City between April 21, 2015, and April 30, 2015. *Iqbal*, 556 U.S. at 678.

First, simply alleging that he experienced "[p]hysical [i]njury" and "[e]xtreme [p]ain," without more, is too conclusory to overcome the PLRA's physical injury requirement.  "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' [do] not suffice" to state a claim that is plausible on its face.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

Second, claiming that he experienced PTSD while incarcerated at FTC Oklahoma City, without more, is similarly insufficient to show that he suffered a more-than-*de-minimis* physical injury.  We do not decide today whether PTSD is

21

categorically a physical or mental injury under the PLRA, nor whether PTSD can

*ever* constitute a more-than-*de-minimis* physical injury. We may *assume* that PTSD

can be a physical injury under the PLRA and that some forms of PTSD can constitute

a more-than-*de-minimis* physical injury. But those assumptions lend no succor to Mr.

White. That is because Mr. White has nevertheless failed to allege sufficient facts to

make plausible that *he* experienced *his* PTSD as a more-than-*de-minimis physical*

injury while incarcerated at FTC Oklahoma City between April 21, 2015, and April

30, 2015.[6]

Because Mr. White has not presented specific facts regarding the way in which

he experienced his PTSD between April 21, 2015, and April 30, 2015, he has not

---

[6]     To the extent that Mr. White implies in his Supplemental Briefing that
we are bound by our decision in *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d
1197 (10th Cir. 2006), to recognize PTSD as a more-than-*de-minimis* physical injury,
we disagree. In *Fuerschbach*, the plaintiff sued for, inter alia, false arrest and assault
and battery under 42 U.S.C. § 1983, and the government officials argued, in part, that
the plaintiff had not alleged a more-than-*de-minimis* injury related to their conduct.
*See id.* at 1206 n.5. We rebuffed this argument, noting that the officers "ha[d]
pointed to no authority [] establishing that injuries arising from Fourth Amendment
violations must be more than de minimis to permit recovery under § 1983." *Id.* "Nor
ha[d] the officers persuaded us that suffering PTSD is a de minimis injury." *Id.*
However, this decision is inapposite here, in Mr. White's case, because—unlike the
PLRA—our Fourth Amendment jurisprudence neither requires the injury to be
*physical* nor, in most instances, requires a plaintiff to plead a more-than-*de-minimis*
injury. *Cf. Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1315 (10th Cir. 2015)
("[T]he Tenth Circuit has required a showing of more than *de minimis* injury *only* in
Fourth Amendment excessive force cases based on handcuffing. . . . Here, however,
we need not decide whether the Marescas need to show more than *de minimis* injury
because the Marescas presented evidence that each of them suffered psychological
and emotional injury that significantly exceeded any *de minimis* requirement."
(emphasis added)). Therefore, our decision in *Fuerschbach*—arising in an entirely
different context—is inapposite: it does not speak to whether PTSD is categorically a
more-than-*de-minimis physical* injury under the PLRA.

plausibly alleged that his PTSD was particularly intense, prolonged, or exacerbated during that period. In other words, he has not plausibly alleged that he experienced his PTSD as a more-than-*de-minimis* physical injury while incarcerated at FTC Oklahoma City.

In the Second Amended Complaint, Mr. White does describe several instances when he experienced specific effects of his PTSD. None of those instances, however, relate to his time at FTC Oklahoma City. For example, Mr. White asserts that "around September 1, 2010," at FCI Beckley, he "was exposed to [RES] *that caused him to experience altered perceptions and hallucinations*." Aplt.'s Suppl. Br. at 30 (emphasis added). While Mr. White alleges that he was also subjected to RES conditions at FTC Oklahoma City, he includes no similar allegations that he experienced specific effects *at that particular time* as a result of those conditions. Consequently, the relevant averments of the Second Amended Complaint are insufficient to state with particularity that Mr. White experienced his PTSD as a more-than-*de-minimis* physical injury while at FTC Oklahoma City between April 21, 2015, and April 30, 2015.

In sum, Mr. White has not sufficiently pleaded that he experienced a more-than-*de-minimis* physical injury while he was incarcerated at FTC Oklahoma City between April 21, 2015, and April 30, 2015.

**b**

For the first time in this litigation, Mr. White asserts in his appellate briefing that the conditions at FTC Oklahoma City *exacerbated* his PTSD. This argument is

23

waived: the Second Amended Complaint does not include any such allegation.  To compound matters, Mr. White never made this argument to the district court.

"'The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true,' . . . and we will not consider evidence or allegations outside the four corners of the complaint in reviewing the district court's Rule 12(b)(6) dismissal." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1286 n.1 (10th Cir. 2019) (first quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); then citing *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).  Further, "[w]hen a party fails to raise an argument below, we typically treat the argument as forfeited . . . [and] will reverse only if the appellant can satisfy our rigorous plain-error test." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (first citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011); then citing *United States v. Kearn*, 863 F.3d 1299, 1305 (10th Cir. 2017)).  However, "the failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison*, 634 F.3d at 1131.

Mr. White does not specifically allege in Counts 47 or 48 of the Second Amended Complaint that the officials at FTC Oklahoma City *exacerbated* his existing PTSD.  Mr. White derives this characterization, raised for the first time in his appellate briefing, from Dr. Ostrov's opinion that "each traumatic experience at a subsequent institution 'add[ed] in each case to the effects of traumatic experiences at a prior institution or occasion.'"  Aplt.'s Suppl. Br. at 33.  Therefore—according to

24

Mr. White—his factual averments that he was subjected to RES conditions at FTC Oklahoma City necessarily include allegations that the officials at FTC Oklahoma City exacerbated his existing PTSD. We find the connection between Dr. Ostrov's opinion and this factual inference too tenuous to agree that Mr. White's exacerbation theory is present in the "four corners of the complaint." *Waller*, 932 F.3d at 1286 n.1. In our view, *Iqbal* and *Twombly* would not countenance any analysis that would make such a connection. Furthermore, because Mr. White did not argue this theory at the district court and does not ask for plain error review on appeal, his appellate argument on this point would be waived in any event—even if this connection could be made in the Second Amended Complaint.

\* \* \*

In sum, we assume without deciding that § 1997e(e) requires a plaintiff to plead a more-than-*de-minimis* physical injury to recover for mental or emotional injury under the PLRA (as well as the FTCA). Because Mr. White failed to plead that he suffered a more-than-*de-minimis* physical injury while incarcerated at FTC Oklahoma City between April 21, 2015, and April 30, 2015, we uphold the district court's dismissal of Counts 47 and 48 of the Second Amended Complaint.

**B**

We turn to assess whether the district court abused its discretion in denying Mr. White's motion to alter or amend the judgment, in which Mr. White sought leave to amend his complaint to pursue nominal damages. Mr. White argued in his motion that, instead of dismissing his case because he failed to plead a more-than-*de-minimis*

25

physical injury, the district court should have allowed his case to continue—so that he could pursue nominal damages—because the PLRA permits a plaintiff to recover nominal damages for mental or emotional injury without a prior showing of physical injury.

The district court denied Mr. White's request because the cases Mr. White cited for the proposition that he was entitled to pursue nominal damages were civil-rights cases—not tort cases involving state law. The court noted that Oklahoma in particular "permits recovery of damages for mental anguish [only] if they are 'produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish.'" R. at 606 n.2 (quoting *Louis v. Mercy Health*, 659 F. App'x 491, 493 (10th Cir. 2016)). In contextualizing the district court's decision, it is helpful to recall that—though our primary focus in resolving this appeal has been the PLRA's physical injury requirement—the underlying predicate for Mr. White's substantive claims is the FTCA. Mr. White sued the United States under the FTCA for IIED and NIED. "[T]he FTCA waives sovereign immunity for certain state law tort claims against the United States." *Garling v. U.S. Env't Prot. Agency*, 849 F.3d 1289, 1294 (10th Cir. 2017). "State substantive law applies to suits brought against the United States under the FTCA." *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004).

In Mr. White's *pro se* opening brief on appeal, he renews his argument that the district court erred by not allowing him to pursue nominal damages. In response, the United States argues that: (1) Mr. White waived his request for nominal damages by

26

not requesting them in the Second Amended Complaint, nor before the district court prior to the entry of judgment; (2) the United States has not waived sovereign immunity to be sued for nominal damages under the FTCA; and (3) nominal damages are unavailable under Oklahoma law.  Notably, Mr. White does not respond to the United States's argument that nominal damages are unavailable under Oklahoma law; consequently, we may affirm on that basis.  Stated otherwise, Mr. White has waived his nominal damages argument by not responding to the United States's third, alternative ground for affirmance.

We have "discretion to affirm on any ground adequately supported by the record," *Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004), and have held that an appellant's failure to respond in his reply brief to an appellee's alternative basis for affirmance waives any non-obvious grounds for objection, *see Eaton v. Pacheco*, 931 F.3d 1009, 1031 (10th Cir. 2019) ("Notably, [Appellant] doesn't respond to the state's mootness argument in his reply brief.  Accordingly, we treat any non-obvious responses he could have made as waived and assume the state's mootness analysis is correct."); *see also United States v. A.S.*, 939 F.3d 1063, 1076 (10th Cir. 2019) ("[E]ven in reply, A.S. still failed to interact with Rule 608(b).  Therefore, we are free to conclude that A.S. waived, at the very least, non-obvious arguments *against* the application of Rule 608's bar to extrinsic evidence.").

We see no obvious defect in the United States's third argument that Mr. White must show that Oklahoma law provides for nominal damages.  Indeed, the United States argues what our caselaw already recognizes: "[that] the FTCA makes the

27

United States liable on tort claims 'in the same manner and to the same extent as a private individual under like circumstances,' 28 U.S.C. § 2674, and '*in accordance with the law of the place where the act or omission occurred*,' 28 U.S.C § 1346(b)." *Franklin v. United States*, 992 F.2d 1492, 1495 (10th Cir. 1993) (emphasis added); *see also Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) ("[T]he government is not liable under the FTCA unless state law recognizes a comparable liability for private persons.").

Our sister circuits have likewise recognized that state law shapes the damages an FTCA plaintiff has at his disposal. *See Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 474–75 (3d Cir. 2013) ("[I]f the District Court determines that Tennessee or Texas law applies, then it should not dismiss the case. Instead, it should foreclose the plaintiffs from obtaining the types of damages that are assigned using proportional liability but allow the plaintiffs to proceed on any damages claim that does not implicate proportional liability (such as nominal damages, *if available*)." (emphasis added)); *Keir v. United States*, 853 F.2d 398, 410 (6th Cir. 1988) (recognizing that a plaintiff may seek nominal damages through an FTCA claim for battery where authorized by state law).

Yet Mr. White has failed to point to any Oklahoma state law in support of his claim for nominal damages, or even make the bare minimum argument that Oklahoma *recognizes* nominal damages for IIED and NIED claims. This omission is particularly stark given that the district court denied his nominal damages request, in part, because "Oklahoma permits recovery of damages for mental anguish [only] if

28

they are 'produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish.'" R. at 606 n.2 (quoting *Louis*, 659 F. App'x at 493). Therefore, Mr. White had ample notice from the district court's order and the United States's subsequent response brief that he would need to address whether nominal damages are available under Oklahoma law in order to succeed in his request. Nevertheless, he has failed to do so. Therefore, Mr. White waived "any objections [to this argument] not obvious to the court." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1099 (10th Cir. 2019) (first quoting *Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994); then citing *Pacheco*, 931 F.3d at 1031). And, as noted, we see no obvious grounds to object to this argument, which obliged Mr. White to demonstrate that nominal damages are available under Oklahoma law. Accordingly, Mr. White has no viable arrows in his quiver to challenge the district court's order denying Mr. White's motion to alter or amend judgment to seek nominal damages, and we thus uphold that order.

## C

Finally, we examine whether the district court abused its discretion in denying Mr. White's motion to reconsider, which sought the reinstatement of the USMS as a defendant to his claims. Because we uphold the district court's dismissal of his claims—i.e., Counts 47 and 48—on the basis that Mr. White failed to allege a more-than-*de-minimis* physical injury, and further determine that Mr. White has waived any argument that he should be allowed to pursue at least nominal damages, we conclude that any relief that we could afford Mr. White regarding the reinstatement

29

of the USMS would have no effect in the real world. Accordingly, we determine that this portion of Mr. White's appeal seeking reinstatement of the USMS is moot.

A federal court lacks subject matter jurisdiction "if a case is moot." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Simply stated, a controversy is moot "when the issues presented are no longer 'live.'" *Schutz v. Thorne*, 415 F.3d 1128, 1138 (10th Cir. 2005) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (2010) (quoting *Kan. Jud. Review v. Stout*, 562 F.3d 1240, 1246 (2009)).

Mootness frequently is the product of an intervening event that is external to the litigation before the court. *See, e.g.*, *Brown v. Buhman*, 822 F.3d 1151, 1170 (10th Cir. 2016) (concluding that the plaintiffs' suit pursuant to § 1983 was moot because a policy declared by the local district attorney's office eliminated the plaintiffs' exposure to criminal prosecution). However, in certain circumstances, mootness can stem from an appellate court's disposition of an appeal on one ground that renders other grounds irrelevant. *See Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 160–61 (4th Cir. 2010) (affirming the district court's judgment on one issue and then "dismiss[ing] the balance of the[] appeals as moot" because the appellate court's resolution of the first issue meant that a decision on the remaining

questions "could not have [had] any practical effect on the outcome of this case");

*see also In re Syngenta*, 61 F.4th at 1222 (denying a contingent cross-appeal "as

moot" given the affirmance of the district court's orders challenged in the appeal); *cf.*

13B Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 3533 (3d ed.),

Westlaw (database updated June 2024) (noting that mootness may "involve

intervening events, often beyond the control of either party, that raise the question

whether relief that once seemed possible and useful remains so").

Under these principles, Mr. White's appeal, as it concerns the district court's

denial of his motion to reconsider, which sought the reinstatement of the USMS as a

defendant to his claims, is moot.  That is because our decision to uphold the district

court's dismissal of Counts 47 and 48 of the Second Amended Complaint and our

rejection of Mr. White's quest to pursue nominal damages mean that there are no

viable claims as to which the USMS could be reinstated and that a decision by us

reversing the district court's decision not to permit such a reinstatement would have

no effect in the real world.  Stated otherwise, Mr. White failed to state a claim in

Counts 47 and 48 of the Second Amended Complaint as to *any* defendant and cannot

pursue even nominal damages as to *any* defendant; consequently, reinstating the

USMS as a defendant would have no effect in the real world.  *See Norfolk S. Ry. Co.*,

608 F.3d at 161; *see also In re Syngenta*, 61 F.4th at 1222; *cf.* 13B Wright, et al.,

*supra*, § 3533.3 ("Nominal damages also suffice to deflect mootness.").  As such, we

dismiss on jurisdictional grounds—as moot—the portion of Mr. White's appeal that

31

challenges the district court's denial of Mr. White's motion to reconsider—which sought the USMS's reinstatement as a defendant to his claims.

**IV**

For the foregoing reasons, we **AFFIRM in part and DISMISS in part**.

Entered for the Court

Jerome A. Holmes
Chief Judge